UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BENJAMIN WRIGHT,<br><br>                Plaintiff,<br>    v.<br><br>ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,<br><br>                Defendant. | CASE NO. 2:21-cv-00335-DGE<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (DKT. NO. 23) AND DIRECTING PARTIES TO SCHEDULE STATUS HEARING TO DISCUSS PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 25) |

### I.    INTRODUCTION

Plaintiff's First Amended Complaint asserts Plaintiff tendered to Defendant funds to satisfy Defendant's subrogation claim arising out of Defendant's payment of $50,000 personal injury protection coverage. It further alleges Defendant failed to investigate the basis for Plaintiff's tender and otherwise elevated its own interests over Plaintiff's when Defendant engaged in an intercompany arbitration without Plaintiff's consent or participation and knowing that Plaintiff disputed Defendant's claim for subrogation. Plaintiff further alleges that

Defendant's conduct in attempting to "claw back" the funds provided to Plaintiff amounts to a denial of insurance coverage.

Based on the facts alleged in the First Amended Complaint and, for the reasons stated herein, the Court DENIES Defendant's Motion to Dismiss (Dkt. No. 23).

The Court also concludes State Farm is necessary party pursuant to Federal Rule of Civil Procedure 19 and ORDERS Plaintiff to join State Farm as a party in this matter.

Lastly, with regard to Plaintiff's Motion to Compel Discovery (Dkt. No. 25), the parties are directed to schedule a hearing.

## II.  BACKGROUND

Plaintiff's First Amended Complaint alleges Plaintiff at all times relevant was a resident of King County, Washington. (Dkt. No. 22 at 2.) Plaintiff was injured while attending college in Oregon. (*Id.*) Plaintiff's mother supplied a vehicle for Plaintiff's use while attending college and purchased liability insurance from Defendant on behalf of Plaintiff. (*Id.*) Plaintiff's mother used her Issaquah, Washington insurance agent (an authorized agent of Defendant) to purchase the insurance. (*Id.*)

On November 14, 2016, Plaintiff was injured in Oregon while riding his bicycle. (*Id.* at 3.) He suffered significant injuries. (*Id.* at 3–4.) Defendant paid Plaintiff $50,000 in personal injury protection (PIP) coverage, which were the limits of the PIP coverage under the insurance Plaintiff's mother purchased. (*Id.* at 4.)

Plaintiff initiated a lawsuit against the person involved in his bicycle accident and eventually settled that matter on December 13, 2018. (Dkt. Nos 22 at 4; 22-1.) As part of that settlement agreement, Plaintiff and the third party agreed Plaintiff was 65% at fault for the

accident. (Dkt. No. 22-1.) Plaintiff also agreed to indemnify and hold harmless the third party's insurer, State Farm, from all subrogation claims. (*Id*.)

On January 23, 2019, Plaintiff tendered $11,656.51 to Defendant as satisfaction for Defendant's PIP subrogation claim. (Dkt. Nos. 22 at 5; 22-2.) Plaintiff also informed Defendant of Plaintiff's settlement with the third party and the percentage of fault agreed to by the parties as part of the settlement. (*Id*.) Defendant "did not substantively respond" to Plaintiff's tender and instead returned the $11,656.51 to Plaintiff. (Dkt. Nos. 22 at 5; 22-3.) Defendant did not investigate whether Plaintiff was contributorily negligent for his injuries and did not seek to resolve the PIP subrogation claim directly with Plaintiff. (Dkt. No. 22 at 5–6.)

State Farm informed Plaintiff that Defendant initiated intercompany arbitration to collect the $50,000 PIP payment Defendant previously made to Plaintiff. (*Id*. at 6.) State Farm demanded Plaintiff indemnify State Farm for any award provided to Defendant. (*Id*.) Plaintiff was not a party to the intercompany arbitration proceedings, but did submit materials to the arbitrator in an attempt to influence the arbitration. (*Id*.) The arbitrator ordered State Farm to pay Defendant $50,000 for the PIP payment Defendant previously paid to Plaintiff. (*Id*. at 7.) Defendant demanded State Farm pay the arbitration award. (*Id*.)

State Farm demanded from Plaintiff "payment of $50,000 to State Farm for the benefit of [Defendant], or directly to [Defendant.]" (Dkt. No. 22-6 at 5.) As part of this demand, State Farm asserts "interest at 9% per annum from August 4, 2019 until paid, plus attorney fees and costs to be determined." (*Id*.) State Farm has threatened litigation to collect the $50,000 for the benefit of Defendant. (*Id*.)

Plaintiff alleges Defendant's effort to "claw back and retain" the PIP benefits previously paid to Plaintiff is tantamount to a denial of coverage in violation of Revised Code of

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (DKT. NO. 23) AND DIRECTING PARTIES TO SCHEDULE STATUS HEARING TO DISCUSS PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 25) - 3

Washington § 48.30.015.  (*Id*. at 8.)  Plaintiff also alleges Defendant acted in bad faith by failing to investigate and address Plaintiff's position that he was contributorily negligent such that Defendant was not entitled to complete reimbursement of the $50,000 PIP payment and by using a forum that prevented Plaintiff from resolving the subrogation dispute directly with Defendant.  (*Id*. at 9.)  Lastly, Plaintiff alleges Defendant's actions violated Washington's Consumer Protection Act.

Defendant moves to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### III.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be granted only if the complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Mere conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of action" are not sufficient.  *Id.*  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).  Thus, the focus is on the allegations contained in the complaint, not on any information or matters presented outside of the complaint.  "If . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment" and "parties must be given a reasonable opportunity to present" all relevant material.  Fed. R. Civ. P. 12(d).

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party.  *Baker v. Riverside Ctny. Off. of Educ.*, 584 F.3d 821, 824

(9th Cir. 2009). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id.* at 570.

## IV.  DISCUSSION

### A. Documents Not Considered

Pursuant to Federal Rule of Civil Procedure 12(d), the only documents the Court considered was the First Amended Complaint (and any documents filed therewith), and the arguments contained in the motion, the opposition, and the reply. Declarations filed in opposition to the motion and any additional evidence referenced therein were not considered.

### B. Choice of Law

As previously noted (*see* Dkt. No. 19 at 6 n.2), decisions regarding choice of law are fact dependent and require thorough analysis. This type of analysis is not readily accomplished by way of a motion to dismiss. *See FutureSelect Portfolio Mgmt. Inc. v. Tremont Grp. Holdings, Inc.*, 331 P.3d 29, 36 n.12 (Wash. 2014) (Choice of law "requires a subjective analysis of objective factors. Though we hesitate to articulate any categorical rules, such an analysis does not lend itself readily to disposition on a CR 12(b)(6) motion.")

Accordingly, the Court makes no ruling at this time as to whether Oregon or Washington law ultimately is the law applicable to this matter. For purposes of this motion only, and drawing all inferences in the light most favorable to Plaintiff, the Court assumes Washington law applies.

### C. Failure to Investigate or Take Into Account Plaintiff's Possible Contributory Negligence Once Plaintiff Tendered PIP Reimbursement, Arguably, Could Support Bad Faith Claim Under Washington Law

Insurers owe a duty to exercise good faith when processing an insured's claim. Wash. Rev. Code § 48.01.030. "'[A] insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests.'" *St. Paul & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664 (Wash. 2008) (quoting *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1136 (Wash. 1986)). In addition, a "PIP insured cannot be required to reimburse the insurer unless and until the insured is fully compensated." *Liberty Mut. Ins. Co. v. Tripp*, 25 P.3d 997, 1007 (Wash. 2001).

> The general rule is that, while an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a tort-feasor responsible for damage, it can recover only the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss.

*Thiringer v. Am. Motors Ins. Co.*, 588 P.2d 191, 193 (Wash. 1978). "[W]e established a broader view that the made whole doctrine applies whenever an insurer seeks 'an offset, *subrogation*, or reimbursement for PIP [personal injury protection] benefits already paid.'" *Daniels v. State Farm Mut. Auto. Ins. Co.*, 444 P.3d 582, 587 (Wash. 2019) (quoting *Sherry v. Fin. Indemnity Co.*, 160 P.3d 31, 34 (Wash. 2007)).[1]

---

[1] Defendant asserts the made whole doctrine is irrelevant because it is based solely on Washington law. (Dkt. No. 31 at 10.) However, as indicated, *supra* IV.B., the Court assumes for purposes of this motion that Washington law is applicable. Defendant also cites to *Truong v. Allstate Prop. & Cas. Ins. Co.*, 211 P.3d 430 (Wash. Ct. App. 2009) and *Peterson v. Safeco Ins.*

Here, the First Amended Complaint asserts Plaintiff tendered $11,656.51 to satisfy Defendant's subrogation interest and explained the basis for tendering said amount. (Dkt. Nos. 22 at 5; 22-2.) Arguably, it is at that moment that Defendant maintained a continuing obligation to deal fairly with Plaintiff and otherwise to give equal consideration to Plaintiff's interests. Plaintiff alleges Defendant, despite being informed of Plaintiff's position, "did not substantively respond to [P]laintiff's explanation regarding the discount required by [Plaintiff's] contributory negligence, and simply issued its own check in the same amount to [Plaintiff]." (Dkt. Nos. 22 at 5; 22-3.) Plaintiff further asserts that rather than engage Plaintiff to resolve the subrogation issue, Defendant initiated a process to undermine Plaintiff's position, and which prevented Plaintiff from fully participating in resolving the subrogation dispute between Plaintiff and Defendant. (Dkt. No. 22 at 5–7.) If true, Defendant did not give equal consideration to Plaintiff's interest in the subrogation dispute and otherwise placed Defendant's interests above Plaintiff's by choosing a process that benefited Defendant in resolving its subrogation claim without regard to Plaintiff. These facts, arguably, could support a claim for insurance bad faith.

---

*Co. of Illinois*, 976 P.2d 632 (Wash. Ct. App. 1999) for the proposition that Plaintiff is presumed to have been fully compensated because Plaintiff settled for less than the tortfeasor's policy limits. (Dkt. No. 31 at 11.) However, *Truong* is based on *Peterson*, *see* 211 P.3d at 434-435, and *Peterson* was explicitly rejected by the Washington Supreme Court:

> Liberty argues that settlement for less than the tortfeasor's limits of liability raise a presumption that the insureds have been made whole. . . . Liberty relies on *Peterson* [ ], which in turn relied on a decision of the Court of Appeals in *Allstate v. Batacan*, 89 Wn.App. 260, 266, 948 P.2d 1316 (1997), for the proposition that an insured who settles is impliedly fully compensated. However, *this court overruled Batacan*. . . . Furthermore, there is no other precedent for the position that settlement for less than the tortfeasor's policy limits somehow raises a presumption of full compensation or otherwise prejudices the insured's PIP benefits.

*Tripp*, 25 P.3d at 197. It appears *Truong* was unaware of the analysis in *Tripp* as *Truong* made no mention of *Tripp*.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (DKT. NO. 23) AND DIRECTING PARTIES TO SCHEDULE STATUS HEARING TO DISCUSS PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 25) - 7

Defendant asserts Plaintiff's decision to indemnify and hold harmless State Farm from any subrogation claims is an intervening and superseding cause such that Defendant's alleged conduct is too remote to be the proximate cause of Plaintiff's alleged injury. (Dkt. No. 31 at 1–3.) This position, however, overlooks the fact that Plaintiff tendered $11,656.51 to satisfy Defendant's subrogation interest, explained the basis for the tender, and advised Defendant to contact Plaintiff if there were any questions or concerns. (Dkt. No. 22-2.) This was all done *before* Defendant engaged in arbitration with State Farm. Defendant, therefore, had knowledge its insured disputed the extent of Defendant's subrogation interest. Thus, it can be argued that it was not the indemnity agreement that caused Plaintiff's injury. Rather, Defendant's decision to continue forward with intercompany arbitration, despite knowledge of a dispute with its insured, was the proximate cause of Plaintiff's injury.

Defendant also argues Oregon law allowed for intercompany arbitration to resolve subrogation disputes and the Court should defer to Oregon law. (Dkt. No. 31 at 4.) Whether Oregon law is applicable is yet to be determined and, as already mentioned, for purposes of Defendant's motion the Court assumes Washington law applies. Moreover, Plaintiff notes that even if Oregon law applies, Oregon Revised Statutes § 742.534 requires consideration of contributory negligence. (Dkt. No. 22 at 5.) Thus, issues regarding applicability of Oregon law and the extent to which Defendant may or may not have complied with Oregon law are beyond the scope of the current 12(b)(6) motion.

Defendant also argues, as it did before, that Plaintiff should be bound by an arbitration award despite Plaintiff not agreeing to intercompany arbitration to resolve his subrogation dispute with Defendant and despite Plaintiff not being a party to the arbitration proceedings. (Dkt. No. 31 at 4–6.) As support, Defendant cite several authorities regarding enforcement of an

arbitration award. (*Id.*) However, Defendant does not identify any authority containing facts similar to the facts asserted in this case. The Court is unaware of a decision concluding that a person should be held bound by an arbitration decision where the person did not agree to arbitration, was not a formal party to the arbitration, and at the same time maintained an active dispute with one of the participants to the arbitration about the specific subject matter of the arbitration.

Lastly, Defendant asserts Plaintiff has suffered no injury. Notwithstanding, it appears that Defendant sought $50,000 from State Farm as reimbursement for the $50,000 PIP Defendant paid to Plaintiff (after Plaintiff placed Defendant on notice of his position regarding Defendant's subrogation rights). (Dkt. No. 22-6.) It also appears State Farm has demanded, and otherwise continues to demand, payment of $50,000, plus interest, attorneys' fees and costs, from Plaintiff "for the benefit of [Defendant]." (*Id.*) It further appears State Farm has threatened litigation to enforce the terms of the settlement agreement with Plaintiff. (*Id.*) There is no reason to believe Defendant has renounced the arbitration award and its claim to $50,000 from State Farm as PIP reimbursement or that State Farm will not seek to enforce Plaintiff's settlement agreement. Accordingly, the Court concludes there is an "actual or imminent, not conjectural or hypothetical injury." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-181 (2000).

Based on the facts alleged in the First Amended Complaint, the Court concludes Plaintiff has sufficiently plead a claim for insurance bad faith and that it otherwise survives Defendant's 12(b)(6) motion.

### D. Consumer Protection Act Claim Supported By Bad Faith Claim

For all intents and purposes, the facts supporting Plaintiff's bad faith claim would support Plaintiff's Consumer Protection Act claim. *See Kosovan v. Omni Ins. Co.*, 496 P.3d 347, 365-

366 (Wash. Ct. App. 2021) (finding that insured established elements of Consumer Protection Act claim where insurer sought to collect PIP reimbursement from tortfeasor before insured had been made whole).

Therefore, the Court concludes Plaintiff has sufficiently plead a claim for violation of the Consumer Protection Act and that it otherwise survives Defendant's 12(b)(6) motion.

### E. Insurance Fair Conduct Claim

Plaintiff's "unpay theory," now characterized as Defendant's attempt to "claw back" the PIP benefits provided to Plaintiff, arguably continues to find support in the plain language of Washington Revised Code § 48.30.015(1).  If in fact Defendant's attempt to "claw back" Plaintiff's PIP benefits is determined to be tantamount to a denial of coverage, Plaintiff has plead a claim under the Insurance Fair Conduct Claim.

The Insurance Fair Conduct Claim, therefore, survives Defendant's 12(b)(6) motion.

### F. Joinder of State Farm

Defendant argues State Farm is a necessary party and that its joinder in this matter is required pursuant to Federal Rule of Civil Procedure 19.  (Dkt. No. 5-6.)  Plaintiff does not appear to contest this issue.  The Court agrees with Defendant that the terms of the Settlement Agreement (Dkt. No. 22-1) entangle Plaintiff, Defendant, and State Farm together such that State Farm's absence may result in the Court providing incomplete relief and/or that State Farm has an interest related to the subject of this action that its absence might lead to inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1).

Accordingly, the Court hereby ORDERS Plaintiff to join State Farm in this matter pursuant to Federal Rule of Civil Procedure 19 by May 20, 2022[2]

## V.   PLAINTIFF'S MOTION TO COMPEL

Plaintiff filed a motion to compel discovery on January 28, 2022. (Dkt. No. 25.)  In Defendant's response, Defendant indicated it supplemented its responses. (Dkt. No. 32.)  The Court now seeks clarification as to the information/documents Plaintiff continues to assert have not been produced.

The parties are directed to contact the Court Room Deputy to schedule a hearing to discuss the alleged outstanding discovery.  Before contacting the Court Room Deputy, the parties are directed to confer with each other by telephone (or in person if they prefer) regarding the alleged outstanding discovery.  Thereafter, the parties shall *jointly* submit a document, no more than three pages, that identifies in bullet point format the discovery claimed to be outstanding and the corresponding objection.  This document shall be filed with the Court three days prior to the scheduled hearing.

Regarding the privilege log Defendant produced (Dkt. No. 33-3), "[t]he work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989).  The burden is on the party asserting work-product to show a document was prepared in anticipation of litigation.  *Heath v. F/V Zolotoi*, 221 F.R.D. 545, 549 (W.D. Wash. May 12, 2004); *Henderson v. Metro. Prop. and Cas. Ins. Co.*, 2010 WL 5394912, at *1 (W.D. Wash. Dec. 22,

---

[2] The Court recognizes that Defendant filed a Motion to Vacate the Order Setting Trial Date and Related Dates. (Dkt. No. 38.)  The Court will consider this motion when it becomes ripe, after Plaintiff has filed its response.

2010). "'More than the mere possibility of litigation must be evident' for material to be considered immune from discovery under the work-product doctrine." *Heath*, 221 F.R.D. at 549 (quoting *Detection Sys., Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D. N.Y. 1982)). Moreover, "[i]t is well established that documents prepared in the ordinary course of business are not protected by the work-product doctrine because they would have been created regardless of the litigation." *Id*. at 549-550. In the end, the failure to provide sufficient detail for a court to evaluate claims of attorney-client privilege or work-product waives any claimed protection. *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, 2008 WL 5214330, at *1 (N.D. Cal. Dec. 12, 2008).

Accordingly, Defendant shall supplement its privilege log to provide more detail about the basis for any claimed protection. First, the phrase "re legal strategy" is used for various documents. The Court is not familiar with this phrase as Federal Rule of Civil Procedure 26(b)(3)(A) identifies documents "prepared in anticipation of litigation or for trial." Second, if Defendant contends that "re legal strategy" means "prepared in anticipation of litigation or for trial," Defendant has not identified what litigation or trial is being referenced and how said document is distinguishable from a document prepared in the ordinary course of business. Third, the privilege log does not identify the role of the persons listed on behalf of Defendant at the time each document was prepared. Lastly, for documents claimed to be attorney-client privilege, Defendant does not identify whether the document was prepared by an attorney or whether the document memorializes a conversation with an attorney. As noted, the failure to provide sufficient detail for the Court to evaluate a claim of privilege or work product may result in a waiver of such protections.

Defendant shall produce the supplemental privilege log to Plaintiff prior to the parties conferring about the alleged outstanding discovery.

### VI.   CONCLUSION

Accordingly, and having considered Defendant's motion to Dismiss, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendant's Motion to Dismiss First Amended Complaint (Dkt. No. 23) is DENIED.  It is further ORDERED:

1. The Parties shall confer regarding Plaintiff's Motion to Compel Discovery (Dkt. No. 25) and any discovery alleged to be outstanding.  Thereafter, the parties shall jointly prepare a bullet point summary, no more than three pages, identifying the discovery alleged to be outstanding.

2. The Parties shall contact the Court Room Deputy to schedule a hearing to discuss Plaintiff's Motion to Compel Discovery and the discovery alleged to be outstanding. The jointly prepared bullet point summary identifying the discovery alleged to be outstanding shall be filed no later than three (3) days before the date of the scheduled hearing.

3. Defendant shall produce a supplemental privilege log detailing the basis for the claimed privilege to Plaintiff prior to the date the parties confer about any alleged outstanding discovery.

4. Plaintiff is ORDERED to join State Farm as a party to this litigation by May 20, 2022.

Dated this 25th day of April, 2022.

David G. Estudillo
United States District Judge